### SCHMIDT v. ANDERSON et.

Ohio Appeals, 9th Dist., Summit Co.

No. 1389.  Decided April 9, 1928.

**First Publication of This Opinion.**

### Syllabus by Editorial Staff.

**829. NEGLIGENCE—301.  Contributory Negligence—396.  Directed Verdicts.**

Where, in action for damages growing out of automobile accident, negligence of defendant is admitted, and, after giving every portion of plaintiff's evidence most favorable interpretation in favor of absence of negligence on her part, different minds might reasonably differ as to whether she was guilty of contributory negligence, question is for jury.

Error to Common Pleas.
Judgment reversed.

Musser, Kimber & Huffman, Akron, for Schmidt.

Dustin, McKeehan, Merrick, Arter & Stewart, Cleveland, for Anderson et.

### STATEMENT OF FACTS.

The parties stand in the same relative positions in this court as they did in the Common Pleas.

The cause of action of the plaintiff against the defendants is based upon the alleged negligence of the defendants when she was run down and injured by an automobile of the defendants on the 8th of January, 1926, at about 7:45 a. m., as she was attempting to cross East Market St., going in a southerly direction, on the crosswalk at the intersection of said street with Howard St., in the City of Akron.

The plaintiff testified that before she started to cross E. Market St., she looked in both directions on East and West Market St., and testified that the street was clear; that she did not see any traffic coming towards her in either direction, and, in company with many others, started to cross said street. The street is 65 feet wide, and there are car tracks and a devil strip, in the middle of said street, 15 feet wide, leaving 25 feet on each side of the outer rails of said tracks.

She testified that, as she saw the automobile coming, she thought she could get across the street before being overtaken by it, but that it was coming so fast that it knocked her down when she was near the curb on the south side of East Market St. The evidence shows that the automobile was being driven at the rate of 25 or 30 miles an hour, in a closely built up district.

(Continued on Page 348)

## PUBLISHER'S COLUMN

THE OHIO LAW ABSTRACT

**Entered as second class matter, February 28, 1923, at the Post Office, Cleveland, Ohio under the Act of March 3, 1879.**

Issued Every Saturday          50 Weeks of the Year

SUBSCRIPTION PRICES AND TERMS

Weekly Edition, One Year (50 issues) Payable in Advance ........................................ $15.00

THE LAW ABSTRACT COMPANY'S
SUBSCRIPTION PRICES AND TERMS

Weekly Edition, One Year (50 issues) Payable in Advance ....................................... $15.00
Discount for advance payment $3.00, making the net price ................................... 12.00
Including 1928 Quarterly Digests, to paid subscribers, no extra charge.
Including Binding of 1927 or 1928 Weekly Parts at end of year, if paid in advance, net........... 13.50
RENEWALS not prepaid (per mo. $1.25)........ $15.00
    No discount allowed after expiration date
Including Cinque Digest and Year's Subscription.. $18.00
Single Numbers ................................ .35
    Receiving Abstract after expiration date, without paying renewals, considered as authorized continuation of subscription.

EXPIRATION NOTICES

DISCOUNTS. We send notices to subscribers, beginning four weeks in advance of the date to which their subscription is prepaid. Thus assuring them of ample knowledge in time to make renewals, and save the $3.00 we give to those who mail check in advance.
EXTENSION RATE. All overtime on expired subscriptions, that were not prepaid will be charged and billed in advance to those who continue to receive the paper, at the full price of $1.25 per month, until payment and prepaid renewal are again made.

THE LAW ABSTRACT COMPANY

Office, Editorial Rooms and Library, 13916 Euclid Ave.
- Cleveland, O.

STAFF

Sam H. Torrey.....................Circulation Manager
Jay F. Laning.........................Business Director
Sheldon R. Laning...................Editorial Director

(Continued from Page 347)

She also testified that she attempted to run in order to avoid being hit by said automobile, and that at the time she was hit she was two or three feet from the south curb of Market St. Plaintiff further testified that she was three or four steps past the south car track when she first saw the automobile, and it probably would have taken seven or eight more of her steps to reach the south curb.

Her evidence further shows that, at the time she was crossing Market St., she could not tell whether the signal lights were red or green, and could not say whether the red light was against her or not, but other evidence shows she started to walk across said street against a red light.

The evidence further shows that one Arnold, the supervisor for the street car company, who was stationed at the northeast corner of Market and Howard Sts., before and at the time of the accident, was standing at the telephone on the pole at said corner, with the receiver to his ear, and saw the plaintiff crossing said street, and at that time his attention was drawn to an automobile (defendant's) going east on West Market St., going faster than the general line of traffic. He testified also that there were other people crossing at the time she was; that the automobile was facing a green light and that the light flashed amber just as the machine hit the intersection. This witness also testified that an automobile going east across the intersection of Howard and Market streets should go on a green light, and it should not pass said intersection on the amber light.

At the close of the plaintiff's case, upon the motion of the defendants, the court directed a verdict in favor of said defendants, and entered a judgment thereon.

PARDEE, J.

"From the evidence, it must be admitted that the defendants were prima facie guilty of negligence at the time of the accident, and it must be conceded that, at the time plaintiff started to cross Market St., she did so in face of a red light, and that she was past the middle of the street and south of the south rail of the street car tracks before she saw the automobile of the defendants approaching her from the west, which automobile, the evidence shows, was, at that time, probably 70 to 100 feet from her, and that, at the time said defendants reached said intersection, the green light, upon which they were then traveling, had changed to amber, which, according to the evidence, should have stopped the defendants from driving further east.

From a careful consideration of all the evidence involving the admitted negligence of the defendants and the claimed contributory negligence of the plaintiff, and after giving every portion of the plaintiff's evidence the most favorable interpretation in favor of the absence of negligence upon her part, we cannot say that such evidence, under such interpretation, is susceptible of no other reasonable inference than that of negligence on her part directly contributing to her injury; and we are unanimously of the opinion that, from the combination of circumstances as shown by the bill of exceptions in this case, the ultimate fact of whether she was guilty of contributory negligence or not is one upon the determination of which different minds might reasonably arrive at different conclusions, and it was therefore the province of the jury to determine whether or not the plaintiff should recover damages from said defendants. This conclusion is in accordance with the recent decision of the Supreme Court in the case of Painesville Utopia Theatre Co. v. Lautermilch.

For the reason stated, the judgment of the trial court is reversed and the cause remanded to that court for further proceedings as provided by law."

(Washburn, PJ., and Funk, J., concur.)